IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2023 Session

**ROBERT D. MURRAY v. STATE OF TENNESSEE ET AL.**

**Appeal from the Circuit Court for Washington County**
**No. 39612     James E. Lauderback, Judge**

_____

**No. E2022-01575-COA-R3-CV**
_____

Employee alleges that his termination from a county election commission was based on discrimination. His timely-filed federal case against the State of Tennessee was subsequently dismissed on Eleventh Amendment grounds. Twenty-one days after the federal case was dismissed and a total of almost three years after his termination, Employee refiled in state court, raising the same allegations of violations of the Tennessee Human Rights Act and the Tennessee Disability Act against the State. Relying on United States Supreme Court precedent that the federal savings statute, 28 U.S.C. § 1367(d), does not apply against a nonconsenting State defendant dismissed on Eleventh Amendment grounds, ***Raygor v. Regents of the University of Minnesota***, 534 U.S. 533 (2002), we conclude that Employee's state court complaint was untimely. We therefore affirm the grant of summary judgment on a different ground than that relied upon by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Melissa B. Carrasco, Allison S. Jackson, and Dalton T. Howard, Knoxville, Tennessee, for the appellant, Robert D. Murray.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jay C. Ballard, Senior Deputy Attorney General, for the appellees, Division of Elections of the State of Tennessee, State of Tennessee, Maybell Stewart, Washington County Election Commission.

Jeffrey M. Ward, Greeneville, Tennessee, for the Amicus Curiae, Washington County,

Tennessee.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves claims of a discriminatory termination of employment. Plaintiff/Appellant Robert Murray, then fifty-seven, was hired to be a full-time Deputy Clerk for the Washington County Election Commission ("the County E.C.") in January 2015. On February 23, 2017, Mr. Murray was informed by his immediate supervisor, the Administrator of Elections, Maybell Stewart, that his employment was terminated, effective immediately.

Mr. Murray filed suit in the United States District Court for the Eastern District of Tennessee ("the district court") on October 12, 2017. He alleged violations of the Family and Medical Leave Act ("FMLA") against Washington County ("the County"), the County E.C., and Ms. Stewart in her official capacity. In response to the County's motion to dismiss, the district court ruled that Mr. Murray was not an employee of the County, but of the State of Tennessee ("the State").[1] The County was therefore dismissed from the suit by order of September 7, 2018. *See **Murray v. Washington Cnty., Tennessee***, No. 2:17-CV-00184, 2018 WL 4289617 (E.D. Tenn. Sept. 7, 2018). The County E.C. and Ms. Stewart, represented by the Tennessee Attorney General, moved for reconsideration of the trial court's ruling that Mr. Murray was an employee of the State and reinstatement of the County as a party. By order of May 23, 2019, the trial court denied the motion. *See **Murray v. Washington Cnty. Election Comm'n***, No. 2:17-CV-00184, 2019 WL 13196993 (E.D. Tenn. May 23, 2019).

In July 2019, Mr. Murray amended his complaint to name the State and the Tennessee State Election Commission ("the State E.C."), in addition to the previously named defendants, the County E.C. and Ms. Stewart in her official capacity (collectively, "Appellees"), and to allege additional violations of the Age Discrimination in Employment Act ("ADEA"), the Tennessee Human Rights Act ("THRA"), the Americans with Disabilities Act ("ADA"), and the Tennessee Disability Act ("TDA"). Appellees moved to dismiss pursuant to their immunity under the Eleventh Amendment to the United States Constitution.[2] By order of December 5, 2019, Mr. Murray's claims under the THRA and

---

[1] At this point, the State was not a party to the litigation and had not been served with a copy of either the complaint or the motion to dismiss.

[2] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme

TDA and his claims for injunctive relief under the ADEA and ADA were dismissed without prejudice, and his claims for monetary damages under the ADA, FMLA, and ADEA were dismissed with prejudice, all on immunity grounds. *See **Murray v. Tennessee***, No. 2:17-CV-00184, 2019 WL 13197073 (E.D. Tenn. Dec. 5, 2019). Mr. Murray's remaining claim for injunctive relief under the FMLA was later dismissed by agreement.

Mr. Murray then filed a complaint in the Washington County Circuit Court ("the trial court") on December 26, 2019. The complaint named Appellees and alleged claims of age discrimination and retaliation in violation of the THRA and disability discrimination and retaliation in violation of the TDA identical to those made in the district court.[3] Appellees moved to dismiss, arguing that Mr. Murray had not timely raised his claims in the district court and that state savings statutes[4] did not apply to toll the applicable statute of limitations while his claims were pending in federal court such that his claims before the trial court were not timely. Relying on the federal savings statute,[5] which it found applicable despite Appellees' sovereign immunity, the trial court found Mr. Murray's state complaint to have been timely, and denied the motion to dismiss.

Appellees then filed two motions for summary judgment: one addressing whether Mr. Murray was an employee of the State or the County and one addressing other aspects of Mr. Murray's causes of action. Appellees' substantive motion for summary judgment raised several arguments to justify the dismissal of Mr. Murray's complaint: (1) that the federal savings statute did not apply against State entities; (2) that Mr. Murray could not establish a prima facie case of disability discrimination or retaliation under the TDA; (3) that Mr. Murray could not establish a prima facie case of age discrimination under the THRA; and (4) that even if Mr. Murray could meet his prima facie case burdens, his employment was terminated for legitimate, non-discriminatory reasons.

By order of October 10, 2022, the trial court ruled that Appellees' argument

---

Court has extended the scope of this Amendment to suits by citizens against their own State." ***E.E.O.C. v. Commonwealth***, 451 F. Supp. 2d 296, 300 (D.P.R. 2006) (citing ***Bd. of Trs. of the Univ. of Ala. v. Garrett***, 531 U.S. 356, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001)).

[3] The County was not named as a defendant and is therefore not a party to this case. However, the County filed a motion for its limited intervention in the trial court in support of its position that the State was barred from relitigating the district court's finding that Mr. Murray was an employee of the State. The County also lodged an amicus brief with this Court raising a similar argument.

[4] Tennessee Code Annotated section 28-1-115 provides that "[n]otwithstanding any applicable statute of limitation to the contrary, any party filing an action in a federal court that is subsequently dismissed for lack of jurisdiction shall have one (1) year from the date of such dismissal to timely file such action in an appropriate state court."

[5] 28 U.S.C section 1367(d) tolls the statute of limitations for a claim brought in federal court pursuant to the court's supplemental jurisdiction but later dismissed and refiled in state court "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

regarding whether Mr. Murray was an employee of the County or the State was barred by the doctrine of collateral estoppel. The trial court also denied Appellees' statute of limitations argument. However, the trial court ruled that Mr. Murray could not establish all of the elements of a prima facie case of disability discrimination, retaliation, or age discrimination and that, regardless, Appellees had produced evidence that Mr. Murray's termination was based on legitimate, non-discriminatory reasons. Thus, summary judgment was granted. Mr. Murray subsequently appealed.

## II. ISSUES PRESENTED

In our understanding, Mr. Murray raises two main issues for review: (1) whether the trial court erred in finding no genuine dispute of material fact and thus granting summary judgment as to his disability discrimination claim; and (2) whether the trial court erred in finding no genuine dispute of material fact and thus granting summary judgment as to his age discrimination claim.

Appellees raise two additional issues: (1) whether Mr. Murray's claims should have been dismissed because he was employed by the County and not the State; and (2) whether Mr. Murray's claims should have been dismissed as barred by the statute of limitations.

## III. STANDARD OF REVIEW

This Court reviews the trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. As part of our review, we must "consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *3 (Tenn. Ct. App. Aug. 22, 2016) (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002)).

"When defendants move for summary judgment based on an affirmative defense such as the statute of limitations, they must establish the elements of the affirmative defense before the burden shifts to the nonmovant." *Id.* (citing *Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991); *Campbell v. Grand Trunk Western R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). And "[t]he determination of whether a suit should be dismissed based on the statute of limitations presents a question of law which we review de novo with no presumption of correctness." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363

S.W.3d 436, 456 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001)).

## IV. ANALYSIS

In its order granting summary judgment, the trial court made essentially three rulings: (1) that Mr. Murray was an employee of the State, (2) that Mr. Murray's complaint was timely, and (3) that Mr. Murray did not establish a prima facie case of discrimination. Unsurprisingly, Appellees take issue with the first two rulings and Appellant takes issue with the third. Because it is dispositive of this appeal, we begin with the second ruling of the trial court, concerning the statute of limitations.

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Id.* These elements "are inter-related and, therefore, should not be considered in isolation." *Id.* The statute of limitations pursuant to both the TDA and the THRA is one year "after the alleged discriminatory practice ceases[.]" *See* Tenn. Code Ann. §§ 4-21-311, 8-50-103. No argument has been raised that Mr. Murray's cause of action accrued at any point other than the date of his termination, February 23, 2017. *See Jackson*, 2016 WL 4443535, at *6 (noting that, because "[a] claim based on the termination of one's employment is a claim based on a discrete act[,]" the statute of limitations for THRA claims based on the plaintiff's termination began to run the day her employment was terminated). Thus, for Mr. Murray's December 26, 2019 complaint to have been timely, the statute of limitations must have been tolled.

The trial court held that the federal savings statute tolled the statute of limitations on Mr. Murray's state law claims while they were pending in the district court. 28 U.S.C. section 1367 provides as follows:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

* * * *

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is

- 5 -

dismissed unless State law provides for a longer tolling period.

Appellees admit that subsection 1367(d) generally applies to toll the statute of limitations for a claim originally brought pursuant to a federal court's supplemental jurisdiction and later dismissed, but assert that it does not apply to nonconsenting State defendants.[6]

Indeed, the United States Supreme Court expressly decided this issue in *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 122 S. Ct. 999, 152 L. Ed. 2d 27 (2002). In that case, two employees filed suit in federal court against their employer, the University of Minnesota, alleging violations of the ADEA and the Minnesota Human Rights Act. *Id.* at 536–37. The case was eventually dismissed pursuant to Eleventh Amendment immunity grounds; the employees refiled their state law claims in state court approximately three weeks after the dismissal. *Id.* at 537. The trial court granted the University's motion for summary judgment, finding the federal savings statute inapplicable; the Minnesota Court of Appeals reversed, but the Minnesota Supreme Court reinstated the dismissal. The United States Supreme Court granted certiorari "on the question [of] whether 28 U.S.C. § 1367(d) is unconstitutional as applied to a state defendant." *Id.*

The Court first noted that subsection 1367(a) did not contain "unmistakably clear" language evincing its intent to abrogate the sovereign immunity guaranteed by the Eleventh Amendment, such that the section's "grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Id.* at 541–42 (citation omitted). Next, the Court acknowledged that on its face, subsection (d) "could be broadly read to apply to any claim technically 'asserted' under subsection (a) as long as it was later dismissed, regardless of the reason for dismissal." *Id.* at 542. But such a reading "raises serious doubts about the constitutionality of the provision given principles of state sovereign immunity" because it "would require a State to defend against a claim in state court that had never been filed in state court until some indeterminate time after the original limitations period had elapsed." *Id.* And the Court has previously explained "that a State may prescribe the terms and conditions on which it consents to be sued, and that [o]nly the sovereign's own consent could qualify the absolute character of its immunity from suits in [its] own courts." *Id.* at 543 (alterations in original) (internal citations and quotation marks omitted).

Thus, the Court looked to "a clear statement principle of statutory construction. When 'Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.'" *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65,

---

[6] At no point in this case have the County E.C. or Ms. Stewart been treated as anything other than State entities entitled to the same privileges as the State itself. As such, we treat Appellees as a single State entity for purposes of this appeal.

109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). The principle signifies "an acknowledgement that the States retain substantial powers under our constitutional scheme, powers with which Congress does not readily interfere." *Id.* at 544 (quoting ***Gregory v. Ashcroft***, 501 U.S. 452, 461, 464, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991)). The Court found a lack of such clarity in subsection (d) as to both the claims and the dismissals covered by the tolling period: the provision does not reflect any "specific or unequivocal intent to toll the statute of limitations for claims asserted against nonconsenting States," and "it is unclear if the tolling provision was meant to apply to dismissals for reasons unmentioned by the statute, such as dismissals on Eleventh Amendment grounds." *Id.* at 545. Accordingly, the Court held that it "will not read [subsection] 1367(d) to apply to dismissals of claims against nonconsenting States dismissed on Eleventh Amendment grounds." *Id.* at 546.[7]

The Court emphasized that the University "raised its Eleventh Amendment defense at the earliest possible opportunity" by including the defense in its answer and its later-filed motion to dismiss. *Id.* at 547. Because the University, as a State defendant, did not expressly consent to be sued in federal court and the employees' state law claims were later dismissed on Eleventh Amendment grounds, subsection 1367(d) did not apply to toll the statute of limitations on the state claims and the dismissal of the case was affirmed. *Id.* at 548.

The situation here is essentially identical to the circumstances in ***Raygor***: state law claims brought in federal court against State defendants were later dismissed on Eleventh Amendment immunity grounds and refiled in state court after the applicable statute of limitations had expired. Like the University, Appellees raised the affirmative defense of their Eleventh Amendment immunity at the earliest opportunity in the district court—in a motion for partial dismissal in July 2019, shortly after the State was made a party pursuant to Mr. Murray's amended complaint—and no argument has been made that Appellees consented to being sued. Therefore, it appears that the statute of limitations for Mr. Murray's THRA and TDA claims was not tolled while his case was pending in the district court, making his complaint in the trial court similarly untimely.

In arguing that the statute of limitations was indeed tolled while this matter was proceeding in the district court, Mr. Murray relies on ***Artis v. D.C.***, 583 U.S. 71, 138 S. Ct. 594, 199 L. Ed. 2d 473 (2018). Respectfully, that reliance is misplaced. The United States Supreme Court in that case granted certiorari to answer the following question:

> Does the word "tolled," as used in [subsection] 1367(d), mean the state limitations period is suspended during the pendency of the federal suit; or does "tolled" mean that, although the state limitations period continues to

---

[7] The Court "express[ed] no view on the application or constitutionality of [subsection] 1367(d) when a State consents to suit or when a defendant is not a State." *Id.* at 547.

run, a plaintiff is accorded a grace period of 30 days to refile in state court post dismissal of the federal case?

*Id.* at 74. The Court acknowledged that there was a division of opinion among State Supreme Courts as to how to apply subsection 1367(d), with some courts applying a "stop-the-clock" approach where the statute of limitations stops running while the state law claim is pending in federal court only to start running again when the tolling period ends, "picking up where it left off"; and some courts providing only a "grace period" where the statute of limitations continues to run while the claim is pending but a fixed period in which to refile after dismissal averts the risk of a time bar. *Id.* at 80–82.

After determining that the text-based arguments in favor of the "stop-the-clock" reading of the tolling provision "overwhelm[ed]" those for the "grace period" approach, the Court next addressed the "significant constitutional question" of whether the statute exceeded Congress' authority. *Id.* at 89. Relying on its earlier decision in ***Jinks v. Richland County, S.C.***, the Court determined that the "argument that [subsection] 1367(d) impermissibly exceeds Congress' enumerated powers" had already been "unanimously rejected[.]" *Id.* (citing 538 U.S. 456, 123 S. Ct. 1667, 155 L. Ed. 2d 631 (2003)). ***Jinks***, the Court explained, held that the federal savings statute was "necessary and proper[,]" "conducive to the due administration of justice in federal court[,]" and "'plainly adapted' to Congress' exercise of its enumerated power[.]" *Id.* at 89–90 (quoting ***Jinks***, 538 U.S. at 462, 464). As to principles of state sovereignty, ***Jinks*** concluded that a federal law regulating the tolling of state limitations periods "falls on the [permissible] 'substantive' side of the line" rather than the procedural. *Id.* at 90 (alteration in original) (quoting ***Jinks***, 538 U.S. at 464–65). Thus, the Court "resist[ed] unsettling the usual understanding of the word 'tolled' as it appears in legislative time prescriptions and court decisions thereon" and applied the stop-the-clock approach. *Id.* at 92.

Accordingly, the ***Artis*** Court's holding involved only *how* subsection 1367(d) applies to toll limitations periods, and did not address *when* or *against whom* the section can be applied. There is no indication that the decision in ***Artis*** was meant to abrogate the ***Raygor*** Court's holding that subsection 1367(d) does not apply to nonconsenting State defendants dismissed on Eleventh Amendment grounds or that the two holdings cannot be read together.[8] *See, e.g.*, ***Brantl v. Curators of Univ. of Mo.***, 616 S.W.3d 494, 498–99 (Mo. Ct. App. 2020) (explaining that ***Artis*** interpreted subsection 1367(d)'s language as stopping the clock, but further noting that "[n]evertheless in ***Raygor*** . . ., the Supreme Court held that '[subsection] 1367(d) does not toll the period of limitations for state law claims asserted against nonconsenting state defendants that are dismissed on Eleventh Amendment grounds'" (citation omitted)); 1 Fed. Proc., L. Ed. § 1:32 (relying on ***Artis*** for

---

[8] Indeed, ***Raygor*** is mentioned only once in the opinion, in a footnote, as support for the stop-the-clock approach. *Id.* at 89 n.13.

the stop-the-clock approach to subsection 1367(d) and **Raygor** for the subsection's inapplicability to nonconsenting states dismissed on immunity grounds); 8 Emp. Coord. *Employment Practices* § 115:17 (same); 1 Bus. & Com. Litig. Fed. Cts. § 1:40 (5th ed.) (same). This is made especially clear when considering that the defendant in *Artis* was the District of Columbia, which, while treated as a State for purposes of section 1367, is not entitled to Eleventh Amendment immunity. *See* 28 U.S.C. § 1367(e) ("As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States."); **CSX Transp., Inc. v. Williams**, 406 F.3d 667, 674 n.7 (D.C. Cir. 2005) ("Eleventh amendment immunity, however, extends only to States and our case law suggests that the District is not a State for the purpose of the Eleventh Amendment." (citing **LaShawn A. by Moore v. Barry**, 144 F.3d 847, 853 n.7 (D.C. Cir. 1998))). And, of course, "it is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court." **Staats v. McKinnon**, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) (citing **Shousha v. Matthews Drivurself Serv., Inc.**, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn. 1962)).

We therefore determine that subsection 1367(d) does not apply in this case, where state law claims against nonconsenting State defendants were dismissed from federal court on Eleventh Amendment immunity grounds. Without the application of the federal savings statute, the statute of limitations on Mr. Murray's THRA and TDA claims was not tolled while this matter was pending in the district court. And without some applicable tolling doctrine, Mr. Murray's December 26, 2019 complaint clearly falls outside the one-year statute of limitations for his claims that accrued on February 23, 2017.[9]

Based on the above, we affirm the granting of summary judgment in favor of Appellees on a different ground than that relied upon by the trial court. *See* **Lewis v. Lewis**, No. E2014-00105-COA-R3-CV, 2015 WL 1894267, at *14 (Tenn. Ct. App. Apr. 27, 2015) ("It is well established . . . that an appellate court 'may affirm the judgment on grounds different from those relied upon by the lower courts when the lower courts have reached the correct result.'" (quoting **In re Estate of Trigg**, 368 S.W.3d 483, 502 n.63 (Tenn.

---

[9] Although Appellees raised Tennessee's savings statutes in their February 2020 motion to dismiss, neither statute has been argued on appeal. *See* **City of Memphis v. Edwards by & Through Edwards**, No. W2022-00087-SCR-11-CV, 2023 WL 4414598, at *2 (Tenn. July 5, 2023) (per curium order) (noting that "to be properly raised on appeal, an issue must be presented in the manner prescribed by Rule 27 of the Tennessee Rules of Appellate Procedure." (citing **Hodge v. Craig**, 382 S.W.3d 325, 334 (Tenn. 2012)). Moreover, while "[i]n some situations, Tennessee's general savings statutes provide plaintiffs with additional time to refile a complaint after the dismissal of [a] previous action . . . these general savings statutes are inapplicable to suits against the State or other governmental entities." **Jackson**, 2016 WL 4443535, at *4 (citing **Sneed v. City of Red Bank, Tenn.**, 459 S.W.3d 17, 28–28 (Tenn. 2014) (discussing a "long line" of Tennessee cases holding that "general savings statutes do not apply to suits against the State or other governmental entities unless the statute waving sovereign immunity expressly permits their application")).

2012))). Because this issue has proven dispositive, we do not reach the merits of the remaining issues.

## V. CONCLUSION

The judgment of the Washington County Circuit Court is affirmed on a different ground and this matter is remanded to the trial court for further proceedings as consistent with this Opinion. Costs of this appeal are taxed to Appellant Robert Murray, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE